ROBERT W. SADOWSKI
RAPHAEL KATZ
Diamond McCarthy LLP
*Attorneys for Relator John Doe*

The New York Times Building
620 8th Avenue, 39th Floor
New York, New York  10018
Tel. No.: (212) 430-5400

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JOHN DOE and THE STATE OF NEW YORK *ex rel.* JOHN DOE,<br><br>       Plaintiffs,<br><br>   - against -<br><br>SENTOSACARE, LLC and SPLIT ROCK REHABILITATION AND HEALTH CARE CENTER, LLC,<br><br>       Defendants. | **COMPLAINT**<br><br>**FILED *IN CAMERA* AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)** |

Plaintiff the United States of America *ex rel.* John Doe and the State of New York *ex rel.* John Doe, by and through his attorneys, Diamond McCarthy LLP, alleges for its complaint as follows:

## PRELIMINARY STATEMENT AND NATURE OF THE ACTION

This is a civil action brought by relator John Doe on his own behalf and on behalf of the United States of America ("United States") against SentosaCare, LLC ("Sentosa") and Split Rock Rehabilitation and Health Care Center, LLC ("Split Rock"), under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "False Claims Act"), to recover damages sustained by, and penalties owed to, the United States as the result of defendants having knowingly presented or caused to be presented to the United States false claims for the payment of funds disbursed under

the Medicare Program, 42 U.S.C. §§ 1395c-1395i-4, and Medicaid Program, 42 U.S.C. §§ 1396 *et seq.*, in excess of the amounts to which defendants were lawfully entitled, from on or about 2001 through the present, as more specifically detailed *infra*.

      1.     These claims are based on the defendants' submission of false and fraudulent patient claims to the United States in order to obtain millions of dollars in payments for various healthcare services from 2001 through the present.

      2.     These claims are based upon the submissions of defendants' false and fraudulent claims for payment as follows:

- Defendants routinely billed Medicare and Medicaid for services never provided to Split Rock's residents, as well as for services inadequately provided or that otherwise were harmful, worthless, and unnecessary.

- Defendants fraudulently operated a bariatric program at Split Rock, which is supposed to aid severely obese individuals in reducing their weight and restoring them to good health. Instead, the bariatric program operates as a front to permanently fill beds, while Defendants bill Medicare and Medicaid for services not provided.

- Split Rock's residents were inadequately assessed or examined, and its in-house physician routinely falsified and signed off on medical charts, indicating he had examined patients that he never saw.

- Split Rock is an unsafe environment that gives substandard care to its residents, who are often consequently degraded, harmed, and abused, and such acts have even resulted in premature deaths.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the claims brought under the False Claims

Act pursuant to 31 U.S.C. § 3730(a), 28 U.S.C. §§ 1331, 1345, and 1367.

4.      Venue lies in this District pursuant to 31 U.S.C. § 3732(a), and 28

U.S.C. §§ 1391(b) and 1391(c), because defendants are located in this District, do business in

this District, and because many of the acts complained of herein took place in this District.

## PARTIES

5.      Plaintiffs are the United States of America on behalf of its agency the

United States Department of Health and Human Services ("HHS") and New York State on

behalf of its agency the Department of Health ("DOH").

6.      Relator John Doe is an individual, residing in New York State.

7.      Split Rock is nursing home located in Bronx, New York, and is a New

York limited liability company.

8.      Sentosa is a New York corporation, with its principal office in Woodmere,

New York.  Upon information and belief Sentosa was the sole owner of Split Rock until it sold it

in 2007.

## THE LAW

**A.      The Medicare Program**

9.      The United States, through HHS, administers the Medicare Program for

the aged and disabled, established by Title XVIII of the Social Security Act. *See* 42 U.S.C.

§§ 1395 *et seq.*  Part A of the Medicare Program provides federal payment for patient

institutional care, including hospitals, skilled nursing facilities, *i.e.*, nursing homes. *See* 42

U.S.C. §§ 1395c-1395i-4.  Part B of the Medicare Program provides supplemental insurance

coverage for medical and other services that are not covered by Part A. 42 U.S.C. §§ 1395j-1395w-4.

10.     The Centers for Medicare and Medicaid Services ("CMS") is the governmental body that is responsible for the administration of the Medicare Program.

11.     Under the Medicare Program, CMS makes payments to medical providers, such as nursing homes, for inpatient and outpatient services after the services are rendered. Medicare enters into provider agreements with hospitals, nursing homes, and other medical providers, that govern their participation in the program. Under Medicare, reimbursement is prohibited if the item or service is not "reasonable and necessary for the diagnosis and treatment of illness or injury ...." 42 U.S.C. § 1395y(a)(1)(A).

12.     Under the Medicare Program, services provided to patients are reimbursed according to two different methods. For Part A services rendered to inpatients, as a general matter, Medicare reimburses based on a diagnostic related group (DRG) under the Prospective Payment System (PPS). For Part B services rendered to outpatients, prior to October 1, 2000, Medicare reimbursed based on cost. Subsequent to that time, Medicare reimburses most outpatient services based on an outpatient PPS. Medicare also reimburses under Part B under a fee schedule for certain services and equipment.

13.     Providers submit claims both for specific services provided to individual beneficiaries and claims for general and administrative costs incurred in treating Medicare beneficiaries.

14.     To assist in the administration of Medicare Part A, CMS contracts with private non-governmental organizations or "fiscal intermediaries" to, *inter alia*, review and process claims for reimbursement submitted by healthcare providers, including the claims

submitted by defendants.   42 U.S.C. § 1395h.  Fiscal intermediaries, typically insurance companies, are responsible for processing and paying claims and auditing cost reports.

15.    Upon discharge of Medicare beneficiaries from a healthcare provider, the provider submits claims for interim reimbursement for items and services delivered to those beneficiaries during their hospital stays.   42. C.F.R. §§ 413.1, 413.60, 413.64.

16.    As a prerequisite to payment by Medicare, CMS requires healthcare providers to submit a Medicare cost report annually at the conclusion of the provider's fiscal year. The cost report is the final claim that a hospital or nursing home files with the fiscal intermediary identifying its costs for services rendered to Medicare beneficiaries and stating the amount of reimbursement to which the hospital or nursing home believes it is entitled for the year.  *See* 42 U.S.C. § 1395g(a); 42 C.F.R. § 413.20; *see also* 42 C.F.R. § 405.1081(b)(1).

17.    Medicare relies upon the cost report to determine whether the healthcare provider is entitled to more reimbursement than the interim payments that the provider has received from Medicare during the course of the year, or whether the provider was overpaid by Medicare, and, consequently, must reimburse Medicare for the excess amounts paid under the program during the course of the year.  *See* 42 C.F.R. §§ 405.1803, 413.60 and 413.64(f)(1).

18.    At all times relevant to this Complaint, Defendants, were required to submit cost reports to their fiscal intermediaries.

19.    Every Medicare cost report contains a "Certification" that must be signed by the chief administrator of the institution or a responsible designee of the administrator. The Medicare cost report certification page includes the following notice:

> Misrepresentation or falsification of any information contained in this Cost Report may be punishable by criminal, civil and administrative action, fine and/or imprisonment under federal law.   Furthermore, if services identified in this report were provided or

procured through the payment directly or indirectly of a kickback or were otherwise illegal, criminal, civil and administrative action, fines and/or imprisonment may result.

20.     The responsible healthcare provider official is required to certify, in

pertinent part, that:

> to the best of my knowledge and belief, [the cost report and the balance sheet and the statement of revenue and expenses] is a true, correct and complete statement prepared from the books and records of the provider in accordance with applicable instructions, except as noted. I further certify that I am familiar with the laws and regulations regarding the provision of healthcare services, and that the services identified in this cost report were provided in compliance with such laws and regulations.

21.     Thus, the healthcare provider must certify that the Medicare cost report is

(1) truthful, *i.e.*, that the cost information contained in the report is true and accurate; (2) correct,

*i.e.*, that the hospital is entitled to reimbursement for the reported costs; (3) complete, *i.e.*, that

the cost report is based upon all cost information known to the provider; and (4) that the services

identified in the cost report are billed in compliance with the law.

22.     Furthermore, the healthcare provider has the legal obligation to disclose to

Medicare through its fiscal intermediary all known errors and omissions in its claims for

Medicare reimbursement, including those costs identified in its cost reports:

> Whoever . . . having knowledge of the occurrence of any event affecting (A) [a hospital's] initial or continued right to any such benefit or payment . . . conceals or fails to disclose such event with an intent fraudulently to secure such benefit or payment either in a greater amount or quantity than is due or when no such benefit or payment is authorized . . . shall in the case of such a . . . concealment or failure . . . be guilty of a felony. . .

42 U.S.C. § 1320a7b(a)(3).

23.     At all times relevant hereto, upon information and belief, Defendants,

were required to -- and did -- submit their annual Medicare cost reports to the government

through the fiscal intermediary, as well as certify their Medicare Cost Reports.

24.     Additionally, in order to be reimbursed by Medicare, a healthcare provider

must enroll in the Medicare program and submit an enrollment application to CMS. Every such

enrollment application contains a "Certification Statement" that must be signed by an appointed

official of the provider, such as its chief executive officer. The appointed official is required to

certify, in pertinent part, that:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to this provider. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare. CMS Form 855A.

25.    Upon information and belief, at all times relevant hereto, Defendants were

required to and did submit a Medicare enrollment application to CMS, which application

contained a Certification Statement signed by the appropriate official.

**B.    The Medicaid Program**

26.    The Medicaid program was created by Title XIX of the Social Security

Act to provide healthcare benefits for poor and disabled individuals. 42 U.S.C. §§ 1396-1396v.

The Medicaid program is funded by both state and federal funds, with the federal contribution

computed separately for each state. 42 U.S.C. §§ 1396b, 1396d(b). Medicaid is administered at

the federal level by CMS. Federal involvement in Medicaid is largely limited to providing

matching funds and ensuring that the states comply with minimum standards in the

administration of the program.

27.    The federal Medicaid statute sets forth the minimum requirements for state

Medicaid Programs to qualify for federal funding, which is called federal financial participation

("FFP"). 42 U.S.C. §§ 1396 *et seq.*

28.    New York State administers Medicaid through DOH.

29.    In order to be reimbursed by Medicaid, a nursing home such as Split Rock

must enroll in the New York State Medicaid Program.

30.     Upon information and belief, at all times relevant hereto, Defendants were required to and did submit an application to be an approved nursing home and an enrollment application to participate in the New York State Medicaid Program.

31.     Upon information and belief, at all times relevant hereto, Defendants were required to and did submit along with such applications a certification that it would comply with all DOH and Medicaid regulations, as well as impliedly certify compliance with such regulations by submitting claims for reimbursement.

32.     Additionally, pursuant to the Nursing Home Reform Act (the "NHRA"), Defendants were required to meet certain Federal quality standards in order to qualify to receive Medicare funds, and expressly and or impliedly certified compliance with the NHRA upon enrolling in and submitting bills to Medicaid.

33.     Upon information and belief, Defendants sought reimbursement from the Medicaid Program for the time period pertinent to this Complaint.

**C.    The Nursing Home Reform Act and New York State DOH Regulations**

34.     Pursuant to the Nursing Home Reform Act ("NHRA") and certain Department of Health Regulations, Defendants were required to meet certain Federal and State quality standards in order to qualify to receive Medicare and Medicaid funds, and expressly and or impliedly certified compliance with the NHRA and the DOH regulations upon enrollment in and upon submitting bills to Medicare and Medicaid, and in their cost reports.

35.     The NHRA establishes quality of life and quality of care requirements that facilities must meet in order to participate and be reimbursed in the Medicare and Medicaid programs. Under the NHRA, a "skilled nursing facility must provide services to attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident,"

8

including but not limited to nursing services, specialized rehabilitative services, pharmaceutical services and dietary services. The nursing home must ensure, among other things, the resident's nutritional status such as body weight, and impose a therapeutic diet to address any nutritional problem. 42 C.F.R. 483.25; 42 U.S.C. § 1396r. DOH regulations have similar requirements. 10 NYCRR § 415.

> 36.     Under the NHRA, Medicare and Medicaid regulations, and DOH regulation, residents must be properly assessed and examined, and the correctness of the assessment must be certified. Additionally, their care must be properly supervised by a physician. The nursing staff must be competent and properly trained. The residents must be treated with dignity and provided an environment free from abuse, including but not limited to, physical abuse, sexual molestation, inappropriate isolation, or the inappropriate use of medications. Additionally, nursing homes are barred from retaliating against their employees or residents for raising complaints about quality of care or abuse.

### D.     The Federal False Claims Act

> 37.     The False Claims Act provides, in pertinent part, that:

any person who (A) knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; (C) conspires to commit a violation of subparagraph (A), (B) . . . or (G); . . . or (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than [$5,500] and not more than [$11,000]... plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729.

> 38.     Billing the Government for the provision of harmful and worthless services constitutes false claims under the False Claims Act.

39.     The False Claims Act is violated by falsely and expressly and/or impliedly certifying compliance with statutes or regulations, such as the NHRA, and then seeking reimbursement from and Medicare, Medicaid, and other government programs for such false claims.

E.     **The New York False Claims Act**

40.     The New York False Claims Act provides, in pertinent part, that:

(1) Any person who (A) knowingly presents, or causes to be presented, to any employee, officer or agent of the State or a local government, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; . . . (G) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State or a local government

*     *     *

shall be liable:  (I) to the State for a civil penalty of not less than six thousand dollars and not more than twelve thousand dollars, plus three times the amount of damages which the State sustains because of the act of that person; and (II) to a local government for three times the amount of damages sustained by such local government because of the act of that person.

New York State Finance Law §§ 189 (1)(A), (B), (G), (I), (II).

41.     Billing the Government for the provision of harmful and worthless services constitutes false claims under the False Claims Act.

42.     The New York State False Claims Act is violated by falsely and expressly and/or impliedly certifying compliance with statutes or regulations, such as DOH regulations, and then seeking reimbursement from Medicaid for such false claims.

## THE FACTS

A.     **Fraudulently Billing for Bariatric Residents**

43.     Taking advantage of the increasing obesity epidemic in the United States, Defendants hatched a scheme to benefit from this epidemic, by introducing a phony bariatric program at Split Rock, which Split Rock continues to operate presently.

44.     The purpose of a bariatric program is to aid in the weight loss of extremely obese individuals and to care for the unique health problems resulting from their obesity. If operated properly, a bariatric program can be very costly, and requires specialized equipment, environmental modification, and staff training, and increased staff.

45.     Split Rock commenced its so-called bariatric program in a scheme to fill beds and bill the Government.  The residents are often not elderly, are admitted solely because of their obesity, and would not otherwise be admitted to a skilled nursing facility.  Upon information and belief, they are also often homeless and/or in need of shelter and therefore easy targets of Defendants' scheme to fill beds without providing treatment.

46.     Split Rock does not provide them with any bariatric services, such as an implemented diet or exercise regime, nor does it prepare them for bariatric surgery.  Rather, it merely houses them indefinitely, without any plan to improve their health, lower their weight, or to discharge them.  Split Rock does not even have adequate staff or equipment to maintain a bariatric program.

47.     Rather than structuring any healthy or therapeutic diet geared to weight loss, bariatric residents are regularly given large meals, and served foods such as rice and potatoes.  They also often order in and consume whole pizza pies and large Chinese food meals, and Defendants allowed them to bring in and consume unhealthy food from outside the facility.

48.     Patients typically do not lose any weight while admitted.  Many instead gain weight or lose mobility.  For example one resident, who was mobile at the time of his

admission gained approximately sixty pounds upon his admission to Split Rock, and his health deteriorated to the point that he was unable to get out of bed.

49.     Not only do residents not receive bariatric treatment, but the special health concerns arising from their obesity are not properly treated. The supplemental staff and equipment that is needed to treat bariatric patients is not available for them and/or used with sufficient frequency. Their health often deteriorates, upon their admission, leading to later hospitalization or even death.

50.     Defendants' billing of Medicare, Medicaid, and/or other government programs for services provided to the bariatric residents constitutes false claims, because Defendants did not provide the necessary bariatric services. To the extent Defendants provided any services, such services were unreasonable, unnecessary, worthless and harmful and therefore also constitute false claims. Additionally, these acts by Defendants also violated the NHRA. Defendants thus falsely and expressly and/or impliedly certified compliance with the NHRA, and sought reimbursement from Medicare, Medicaid, and other government programs for such false claims.

**B.     Fraudulent Preparation of Patients' Charts and Inadequate Patient Assessment, Examination and Care**

51.     Split Rock has a resident doctor, Doctor Roman. Dr. Roman is required to adequately and properly assess and examine the residents, but does not do so. The residents go months without even seeing him. He fills out the residents' charts behind closed doors without ever examining them.

52.     Upon information and belief, he generally neglects to provide any adequate care for the residents, and their health consequently deteriorates. One nurse noticed

that one of the residents' health was deteriorating, and so she repeatedly asked Dr. Roman to examine the resident. He ignored her pleas, and the resident died.

**C.    Unsafe and Substandard Practices Lead to Harm and Abuse of Patients**

53.    Split Rock is an unsafe environment, run only to fill beds and to maximize profits while lowering costs. Its residents are routinely neglected, and are often abused. Residents and staff are both fearful of reprisals for raising complaints about the poor care of the residents.

54.    In 2009, a man in his mid-twenties was admitted to Split Rock because he had broken his legs. He did not need to be admitted and, upon information and belief, was only admitted to fill a bed and fraudulently bill the Government. One nurse at Split Rock recognized that he was a drug addict, but was routinely prescribed morphine unnecessarily. He was also allowed to roam Split Rock and harass other residents. In particular, he began a sexual relationship with one of the patients in Split Rock's psychiatric ward. Split Rock and its staff were aware of the sexual abuse but did not do anything about it. When one of the nurses attempted to stop his harmful behavior and abuse of the psychiatric patient, Defendants reprimanded and ultimately fired her. That same nurse had repeatedly complained about Split Rock's most egregious activity, and her termination was retaliation.

55.    Patients are humiliated and treated without dignity, and are fearful to raise any complaints. For example, Irare Sabasue, a resident since 2004, complained about her mistreatment, which included hitting. In 2006, she experienced reprisals, including the improper removal of bandages. Additionally, her belongings were disposed of without her permission.

13

56.     Upon information and belief, residents are routinely and inappropriately sedated with medications, not for their well-being, but for the convenience of the Split Rock staff and administration. For example, in 2007, a resident who was always screaming, upon information and belief, was medicated to stop her from screaming on the day of a New York State inspection.

57.     Split Rock residents' health routinely worsens during their stays, which is generally ignored by Dr. Roman and the nursing staff. They often develop infections during their, stays, and the poor care often results in hospitalization and even sometimes the death of the resident.

### SUMMARY AND CONCLUSION

58.     Defendants have demonstrated their knowing and willful scheme to seek reimbursement for services either not provided at all, or for otherwise worthless, harmful, inadequate, and/or unnecessary, services, and to evade the requirements of the NHRA, New York DOH regulations, and other applicable rules and laws. Consequently, Defendants received payments from Medicare, Medicaid and other federal healthcare programs that they were not entitled to in violation of the False Claims Act and the New York State False Claims Act.

### FIRST CLAIM

**Violations of the False Claims Act
(31 U.S.C. § 3729 (a)(1)(A)
Presenting False Claims for Payment**

59.     Plaintiffs incorporate by reference the above paragraphs as if fully set forth herein.

60.     The United States seeks relief against Defendants under Section 3729(a)(1)(A) of the False Claims Act. 31 U.S.C. § 3729(a)(1) (A).

14

61.   As set forth above, Defendants knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval in connection with the submission of their requests for reimbursement under the Medicaid and Medicare Programs.

62.   Medicare and Medicaid paid Defendants because of their fraudulent conduct.

63.   By reason of Defendants' false claims, the United States has been damaged in a substantial amount to be determined at trial.

## SECOND CLAIM

### Violations of the False Claims Act
### (31 U.S.C. § 3729 (a)(1)(B)
### Use of False Statements

64.   Plaintiffs incorporate by reference the above paragraphs as if fully set forth herein.

65.   The United States seeks relief against Defendants under Section § 3729 (a)(1)(B)) of the False Claims Act.  31 U.S.C. § 3729 (a)(1)(B).

66.   As set forth above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to false and fraudulent claims, in connection with the submission of their requests for reimbursement under the Medicaid and Medicare Programs.

67.   The United States paid such false or fraudulent claims because of Defendants' acts and conduct.

68.   By reason of Defendants' false claims, the United States has been damaged in a substantial amount to be determined at trial.

## THIRD CLAIM

### Violations of the False Claims Act
### (31 U.S.C. § 3729 (a)(1)(G))
### Use of False Statements

69.     Plaintiffs incorporate by reference the above paragraphs as if fully set forth herein.

70.     The United States seeks relief against Defendants under Section § 3729(a)(1)(G) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

71.     Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government in connection with the submission of their requests for reimbursement under the Medicaid and Medicare Programs.

72.     Defendants failed to pay or transmit money due to the United States because of Defendants' acts and conduct.

73.     By reason of the Defendants' use of false statements, the United States has been damaged in a substantial amount to be determined at trial.

### FOURTH CLAIM

### Violations of the New York State False Claims Act
### (NY State Finance Law § 189 (1)(a))
### Presenting False Claims For Payment

74.     Plaintiffs incorporate by reference the above paragraphs as if fully set forth herein.

75.     The State of New York seeks relief against Defendants under Section 189 (1)(a) of the New York False Claims Act, NY State Finance Law § 189 (1)(a).

16

76.     As set forth above, Defendants, knowingly or acting with deliberate ignorance or with reckless disregard for the truth, presented, or caused to be presented, to an officer, employee or agent of the State of New York, false and fraudulent claims for payment or approval in connection with the submission of Defendants' requests for reimbursement under the Medicaid Program.

77.     The State of New York paid Defendants under the Medicare and Medicaid Programs because of Defendants' fraudulent conduct.

78.     By reason of Defendants' conduct, the State of New York has been damaged in a substantial amount to be determined at trial.

**FIFTH CLAIM**

Violations of the New York State False Claims Act<br>(NY State Finance Law § 189 (1)(b))<br>Use of False Statements

79.     Plaintiffs incorporate by reference the above paragraphs as if fully set forth herein.

80.     The State of New York seeks relief against Defendants under Section 189 (1)(b) of the New York False Claims Act, NY State Finance Law § 189 (1)(b).

81.     As set forth above, Defendants, knowingly or acting in deliberate ignorance or in reckless disregard for the truth, made, used, or caused to be made and used, false records and statements, in order to get false or fraudulent claims paid or approved by the State of New York in connection with the submission of Defendants' requests for reimbursement under the Medicaid Program.

82.     The State of New York paid Defendants under the Medicare and Medicaid Programs because of Defendants' fraudulent conduct.

17

83.     By reason of Defendants' conduct, the State of New York has been damaged in a substantial amount to be determined at trial.

## SIXTH CLAIM

Violations of the New York State False Claims Act
(NY State Finance Law § 189 (1)(g))
Use of False Statements

84.     Plaintiffs incorporate by reference the above paragraphs as if fully set forth herein.

85.     The State of New York seeks relief against Defendants under Section 189 (1)(g) of the New York False Claims Act, NY State Finance Law § 189 (1)(g).

86.     As set forth above, Defendants, knowingly or acting in deliberate ignorance or in reckless disregard for the truth, made, used, and caused to be made and used, false records and statements, in order to conceal, avoid, or decrease the obligation to pay or transmit money or property to the State of New York in connection with the submission of Defendants' requests for reimbursement under the Medicare and Medicaid Programs.

87.     Defendants failed to pay or transmit money due to the State of New York because of Defendants' acts and conduct.

88.     By reason of Defendants' acts and conduct, the State of New York has been damaged in a substantial amount to be determined at trial.

WHEREFORE, plaintiff the United States *ex rel.* John Doe requests that judgment be entered in its favor and against Defendants as follows:

(a)     On the First, Second and Third Claims for Relief (Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1) (A), (B) and (G), for treble the United

18

States' damages, in an amount to be determined at trial, and an $11,000 penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants; and

(b)  Awarding John Doe his relator's share pursuant to 31 U.S.C. § 3730(d)(1) or (2); and

(c)  On the First, Second and Third Claims for Relief, an award of costs and attorney's fees pursuant to 31 U.S.C. § 3730(d); and

(d)  On the Fourth, Fifth and Sixth Claims for relief (Violations of the New York False Claims Act, NY State Finance Law § 180(1)(A), (B), (G) and (I), for treble the State of New York's damages, in an amount to be determined at trial, plus a $12,000 penalty for each false claim; and

(e)  Awarding john Doe his relator's share pursuant to NY State Finance Law § 190(6); and

(f)  On the Fourth, Fifth, and Sixth Claims for Relief, an award of costs and attorney's fees pursuant to NY State Finance Law § 190(7); and

(g)  Awarding such further relief as is proper.

**JURY TRIAL IS DEMANDED**

Dated: New York, New York
      June 20, 2011

                                    DIAMOND MCCARTHY LLP
                                    *Attorneys for Relator John Doe*

By:

                                    Robert W. Sadowski (RS-4473)
                                    Raphael Katz (RK-6603)
                                    The New York Times Building
                                    620 8th Avenue, 39th Floor
                                    New York, New York  10018
                                    Telephone: (212) 430-5407
                                    Facsimile: (212) 430-5417
                                    rsadowski@diamondmccarthy.com

TO:

United States Attorney for the
Southern District of New York
86 Chambers Street
New York, NY 10007

Attorney General
Civil Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

New York State Attorney General
Medicaid Fraud Control Unit
120 Broadway, 13th Floor
New York, New York 10271